UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANDREW MAGDY KAMAL,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.

Case No. 24-12073
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING MOTION TO DISMISS [15]**

Andrew Kamal worked for Ford Motor Company as a Cyber Defense Analyst for almost two years. During that time, Kamal claims that he was harassed by a supervisor, required to take a "people skills course" not required for other employees, and treated unfairly. Kamal reported his concerns to Ford's Human Resources Department via an internal ethics complaint. Shortly thereafter, Kamal was terminated.

Kamal believes that he was fired in retaliation for filing his complaint. Accordingly, he brought this *pro se* lawsuit alleging seven claims: termination in violation of public policy (Count I), retaliation (Count II), hostile work environment (Count III), violations of the Whistleblower Protection Act (Count IV), violations of the Fair Labor Standards Act (Count V), intentional infliction of emotional distress (Count VI), and *respondeat superior* (Count VII). In response, Ford has moved to dismiss Kamal's public policy and WPA claims. For the reasons below, the Court

agrees with Ford that Kamal has failed to adequately plead these two claims. Accordingly, the Court GRANTS Ford's motion to dismiss.

# I.

In 2022, Andrew Kamal began working for Ford Motor Company as a Cyber Defense Analyst. (ECF No. 13, PageID.98.) During his time at Ford, Kamal claims that his boss, Ryan Kloman, harassed him by, among other things, "heckl[ing]" Kamal for coming into the office on days off, making inappropriate comments regarding Kamal's health, and telling others false stories about Kamal browsing the internet at work. (*Id.* at PageID.100, 102.) Kloman also, says Kamal, "created animosity by allowing a new hire to take credit for [his] work and socially insult [him]" (*id.* at PageID.110) and required Kamal to take "people skills courses" that other members of his team were not required to take (*id.* at PageID.103). Kamal believes "[t]here was a preconceived notion that [he] had a social disability," and that he was ostracized because of it. (*Id.* at PageID.102.) He also says this notion led to him being pressured to sign a medical disclosure form and being threatened with "negative reviews regardless of his performance." (*Id.*)

Similarly, Kamal was dissatisfied with other aspects of work culture on his team. For instance, he "raised concerns about the excessive amount of information being shared and the time dedicated to coordinating with different teams, especially for projects deemed out of scope." (*Id.* at PageID.105.) He also sent a team-wide email stating that he had "an unhealthy amount of workload, especially if hindered by a bureaucratic work culture." (*Id.* at PageID.107.) He stated that "this type of

2

workplace culture doesn't boost productivity and last year it [was] an uphill battle of fighting the premise of a lack of need for [his] talent." (*Id.* at PageID.108.)

Due to this environment, Kamal filed a complaint with Ford's Human Resources Department about "ethical concerns" including "cybersecurity vulnerabilities and alleged misconduct by colleagues." (*Id.* at PageID.113.) Kamal provides no other information about the content of that HR complaint or about any communications he may or may not have received in response to that complaint. Around a month and a half after he filed his HR complaint, on June 17, 2024, Kamal's employment was terminated. (*Id.* at PageID.99.) Ford personnel told Kamal that he was being let go because he was "not being resourceful enough." (*Id.* at PageID.111.) But Kamal claims the company really fired him in retaliation for filing the complaint with HR. (*Id.* at PageID.112.)

So Kamal filed this lawsuit raising seven claims. (*See generally* ECF No. 13.) Ford moved to dismiss two of them—Count I (a public policy wrongful discharge claim) and Count IV (a Whistleblower Protection Act claim)—under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 15, 17.) Kamal opposed the motion. (ECF No. 16.) The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f).

## II.

In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable" to Kamal and determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible

3

on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.

### A. Public Policy Wrongful Discharge Claim (Count I)

Start with Kamal's public policy wrongful discharge claim. Although employment in Michigan is presumed to be at-will, Michigan courts have recognized that "some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). The Michigan Supreme Court has identified three such grounds: "(1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." *McNeil v. Charlevoix County*, 772 N.W.2d 18, 24 (Mich. 2009) (citing *Suchodolski*, 316 N.W.2d at 711–12).

Put differently, to state a claim under this theory of liability, Kamal must either (1) point to an "explicit legislative statement" prohibiting discharge of

4

employees for filing internal ethics complaints; (2) allege that Ford terminated his employment for "refus[ing] to violate the law;" or (3) identify a "well-established legislative enactment" that created a "right" for him to make an ethics complaint. *See McNeil*, 772 N.W.2d at 24; *Suchodolski*, 316 N.W.2d at 711–712.

Here, Kamal invokes the second theory of wrongful discharge, asserting that he was fired for refusing to violate the law. (ECF No. 16, PageID.274.) Kamal says he refused to overlook cybersecurity problems and subsequently "raised concerns about Ford's failure to address cybersecurity vulnerabilities, which implicate public policies under federal law, including the Cybersecurity Information Sharing Act (CISA) and the Federal Trade Commission Act." (*Id.* at PageID.278; *see also id.* at PageID.280 ("Plaintiff's actions in reporting cybersecurity vulnerabilities align with his professional and legal responsibilities as a Cyber Defense Analyst to ensure compliance with federal cybersecurity regulations. . . . Plaintiff's refusal to overlook cybersecurity breaches and workplace harassment reflects his adherence to legal and ethical standards.").)

Kamal also raises arguments under the third theory of wrongful discharge— that a well-established legislative enactment confers a right to file an ethics complaint, and that he was fired in retaliation for filing such a complaint. He argues that he was fired for filing an internal ethics complaint "detail[ing] harassment by [his] supervisor," which "directly implicate[s] public policies articulated in Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act." (*Id.* at PageID.278.) What Kamal means by "implicates" is not entirely clear. But, as far as

5

the Court can discern, Kamal argues that Ford's internal "Code of Conduct" "incorporates legal standards mandated by federal and state laws" like Title VII and ELCRA. (*Id.* at PageID.280.) So "[w]hile not a standalone legal authority," Kamal contends "the Code reflects Ford's acknowledgment of its obligations under public policy." (*Id.*) Thus, Kamal argues, the Code itself can support a claim for wrongful discharge in violation of public policy. (*Id.*)

There are several flaws in Kamal's arguments. First, as for his assertion that he was fired for refusing to violate the CISA or the FTC Act, Kamal's complaint makes no reference to either statute. (*See* ECF No. 13.) And his response brief cannot be used to cure defects in his complaint. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020).

But even if Kamal had referenced these statutory provisions in his complaint, it would not have made a difference. Indeed, Kamal does not suggest that anyone at Ford asked him to violate the CISA or the FTC Act, nor does he plead any facts to that effect. Rather, at most, he merely says that he was asked to "overlook cybersecurity breaches." (ECF No. 16, PageID.280.) So Kamal does not state a claim under the second theory of refusing to violate the law. And, to the extent that Kamal suggests he was fired for the lawful exercise of his "rights" under these statutes (*see* ECF No. 13, PageID.112), neither the CISA nor the FTC Act create any private rights for Kamal to exercise, *see* 6 U.S.C. §§ 1501–1510 (CISA); 15 U.S.C. §§ 41–58 (FTC Act); *see, e.g.*, *Fed. Trade Comm'n v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988) ("[A] private party [cannot] invoke the jurisdiction of the federal

6

courts to enforce the Federal Trade Commission Act."). So Kamal also fails under the third theory of "exercising a right conferred by a well-established legislative enactment." *McNeil*, 772 N.W.2d at 24.

Second, as for Kamal's assertion that he was fired for exercising his "right" to make an internal ethics complaint, the Sixth Circuit has foreclosed that theory. Simply put, "no law or policy" bars Michigan employers from "retaliat[ing] against employees who report legal violations to their supervisors." *Scott v. Total Renal Care, Inc.*, 194 F. App'x 292, 298 (6th Cir. 2006). Thus, "there is no common law cause of action for discharge in retaliation for internal reporting of violations of law." *Goldfaden v. Wyeth Lab., Inc.*, 482 F. App'x. 44, 51 (6th Cir. 2012). And, insofar as Kamal argues that Ford's Code of Conduct provides him with the "right" to make an internal ethics complaint, Ford's internal procedures are not Michigan "law or policy." *Scott*, 194 F. App'x at 298; *see also Suchodolski*, 316 N.W.2d at 712 ("The code of ethics of a private association does not establish public policy.").

Finally, Kamal's attempt to ground his public policy claim in Title VII and ELCRA also fails. A public policy wrongful discharge claim is a common law claim that is available only where no statutory retaliation claim exists. *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 650 (Mich. 1993). But where there is an "applicable statutory prohibition against discharge in retaliation for the conduct at issue," *id.*, the employee's "exclusive remedy is to bring a claim of retaliation under the applicable . . . statute." *Sulieman v. St. John Hosp. & Med. Ctr.*, No. 07-15426, 2009 WL 10680532, at *7 (E.D. Mich. June 26, 2009); *see Kimmelman v. Heather Downs*

7

*Mgmt. Ltd.*, 753 N.W.2d 265, 268 (Mich. Ct. App. 2008). Here, both Title VII and ELCRA provide protections against employer retaliation. *See* Mich. Comp. Laws § 37.2701(a) (ELCRA); 42 U.S.C. § 2000e-3(a) (Title VII). So if Kamal believes Ford retaliated against him in violation of either statute, he must bring a retaliatory firing claim under Title VII or ELCRA—which he does (Count II). But he cannot also repackage his allegations to form a public policy wrongful discharge claim. *See, e.g.*, *Sulieman*, 2009 WL 10680532, at *7; *Lee v. Dana Inc.*, No. 20-11282, 2024 U.S. Dist. LEXIS 178926, at *30–31 (E.D. Mich. Sept. 30, 2024). Accordingly, Kamal's public policy claim must be dismissed.

## B. Whistleblower Protection Act Claim (Count VI)

Kamal's WPA claim fares no better. Michigan's Whistleblower Protection Act prohibits employers from firing employees "because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law . . . to a public body." Mich Comp. Laws § 15.362. The WPA defines "public body" broadly to include:

> (i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.
>
> (ii) An agency, board, commission, council, member, or employee of the legislative branch of state government.
>
> (iii) A county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal corporation, or a board, department, commission, council, agency, or any member or employee thereof.
>
> (iv) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body.

> (v) A law enforcement agency or any member or employee of a law enforcement agency.
>
> (vi) The judiciary and any member or employee of the judiciary.

*Id.* § 15.361(d).

Ford argues that Kamal fails to state a claim because Ford's internal HR department is not a "public body" as defined by the WPA. (ECF No. 15, PageID.184–185.) For his part, Kamal concedes that he did not raise his concerns to a "public body" but argues that his internal complaint could have triggered intervention from such public bodies like the FTC or OSHA. (ECF No. 16, PageID.282.)

Ford has the better argument. Nowhere does the statute protect an employee's internal reporting to a private HR department. Indeed, the Sixth Circuit has emphasized that "the public-body element is the core of the WPA's reporting requirement." *Talhelm v. ABF Freight Sys., Inc.*, 364 F. App'x. 176, 182 (6th Cir. 2010). And Michigan courts have consistently rejected attempts to transform wholly internal reports within private entities into WPA claims. *See, e.g.*, *Manzo v. Petrella*, 683 N.W.2d 699, 705 (2004) (finding that the WPA does not protect a doctor's right to report alleged misconduct to a hospital's internal peer review committee); *Richards v. Metron Integrated Health Sys.*, No. 242502, 2004 Mich. App. LEXIS 708, at *5 (Mich. Ct. App. Mar. 11, 2004) (affirming grant of summary judgment where "plaintiff indicated that his intent was to report the matter to his superiors at the ambulance company, not to a government body"); *Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 806 (E.D. Mich. 2014) (finding that an email stating plaintiff planned to report activity to someone "outside" of the University was insufficient to satisfy the public

9

body requirement of the WPA). Thus, because Ford's HR department is not a "public body," Kamal's WPA claim must also be dismissed.

## IV.

For the foregoing reasons, the Court GRANTS Ford's motion to dismiss (ECF No. 15) Counts I and IV of Kamal's complaint.

SO ORDERED.

Dated: June 16, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
