UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW MAGDY KAMAL,

      Plaintiff,

v.

FORD MOTOR COMPANY,

      Defendant.

Case No. 24-cv-12073

Hon. Laurie J. Michelson

Magistrate Judge Curtis Ivy, Jr.

**Defendant Ford Motor Company's**
**Response to Plaintiff's Motion to Compel**

# Table of Contents

Issues Presented.................................................................................................... iii

Controlling Authorities ........................................................................................ iv

Introduction ......................................................................................................... 1

Background .......................................................................................................... 2

    A.    Plaintiff's remaining claims. ..................................................................... 2

    B.    Ford's responses and objections to Plaintiff's discovery requests. ................... 4

Legal Standard...................................................................................................... 8

Argument ............................................................................................................. 9

    I.    Plaintiff's motion violates the Local Rules and the Court's directive................ 9

    II.    Plaintiff's discovery requests fail Rule 26's proportionality requirement because his claims fail for elementary reasons that no discovery can cure..... 10

    III.    Plaintiff seeks nine categories of documents Ford already produced but failed to review before filing his motion....................................................... 12

    IV.    Plaintiff's 13 remaining requests are overbroad and seek irrelevant information that is not proportional to the needs of the case. ........................ 15

Conclusion........................................................................................................... 22

**Issues Presented**

Can Plaintiff compel discovery when he didn't attach his requests, hasn't reviewed what Ford already produced, won't explain what he needs or why, and seeks overbroad and irrelevant documents—all while his own testimony has already defeated his claims on elementary legal issues no discovery can fix?

# Controlling Authorities

**Cases**

*EEOC v. Aspire Regional Partners, Inc.*,
   2025 WL 1291454 (S.D. Ohio May 5, 2025) ............................................................. 10

*FTC v. E.M.A. Nationwide, Inc.*,
   767 F.3d 611(6th Cir. 2014) .................................................................................. 11

*Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Practices Litig.*,
   752 F.3d 1065 (6th Cir. 2014) ............................................................................... 12

*Pittman v. Experian Info. Sol, Inc.*,
   901 F.3d 619 (6th Cir. 2018) .................................................................................. 8

*Smith v. Leggett Wire Co.*,
   220 F.3d 752 (6th Cir. 2000) ................................................................................. 17

*Tolliver v. Federal Rep. of Nigeria*,
   265 F. Supp. 2d 873 (W.D. Mich. 2003) ............................................................... 10

**Rules**

E.D. Mich. LR 37.2. .................................................................................................. 9

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 8, 9

Fed. R. Civ. P. 26(b)(1) advisory committee note to 2015 amendment ...................... 10

## Introduction

Two days before discovery closed, Plaintiff filed this motion to compel 22 categories of documents. He didn't attach the actual discovery requests to his motion. He can't explain which documents he seeks prove which elements of which claims— even though the Court specifically told him to do exactly that during the last discovery status conference. And he admits he never reviewed the 1,100+ pages Ford already produced before filing his motion.

Four independent reasons require denial. *First*, Plaintiff violated Local Rule 37.2 and ignored this Court's express instruction, making his motion both procedurally defective and substantively empty. *Second*, Plaintiff's discovery requests fail Rule 26's proportionality requirement because his own deposition testimony admits away his legal claims and no amount of Ford's documents can provide a remedy. *Third*, Plaintiff seeks nine categories of documents Ford already gave him months ago. He just never looked at them. *Fourth*, his remaining 13 requests are extremely overbroad seeking Ford's proprietary technical systems, confidential business information, and cybersecurity infrastructure that have nothing to do with whether Ford retaliated against or harassed him. Plaintiff's motion should be denied.

## Background

### A.    Plaintiff's remaining claims.

Plaintiff worked approximately 18 months in Ford's cybersecurity department before Ford terminated his employment on June 21, 2024 for poor performance. Ford didn't discharge Plaintiff on a whim or based on vague concerns. Over his final year of employment, Ford Supervisor Ryan Kloman meticulously documented Plaintiff's performance failures: two formal negative performance reviews and four months of weekly one-on-one meeting minutes that itemized specific, repeated deficiencies in completing assigned work.

Despite this clear paper trail establishing fair treatment, Plaintiff's First Amended Complaint claims:

(1) retaliation under the ADA; (2) disability harassment under the ADA; (3) intentional infliction of emotional distress; (4) unpaid overtime under the FLSA; and (5) vicarious liability. Plaintiff's deposition testimony about these claims is now complete. He appears genuinely confused about the evidence he needs to produce to prove his claims. Plaintiff seems to believe that cataloging every workplace frustration he experienced—disagreements with Kloman about work priorities, disputes about how Ford wanted him to perform his job, frustration over what he calls Ford's "bureaucracy"—proves retaliation or harassment.

This confusion drives his motion to compel. Plaintiff demands broad categories

2

of documents that would recreate his complete access to every document and tool he used during his employment. His goal appears to be to prove Ford's business judgment was wrong in all these common workplace disputes and convince this Court that his ideas for Ford's cybersecurity department were better than Ford's. But proving Ford prioritized the wrong objectives or was wrong about what tasks his job required him to perform is not the same as proving Ford discriminated or retaliated against him.

At the January 6, 2026 status conference, the Court recognized the disconnect between the scope of Plaintiff's requests and what Plaintiff needed to prove his legal claims. The Court directed Plaintiff to explain in his upcoming motion how each specific request would actually prove discriminatory harassment or retaliation.

Plaintiff's motion not only fails this directive—it's nearly impossible to follow. He jumps between document categories without explaining what he's asking for, conflates different legal theories, makes contradictory arguments about the same requests, and nowhere connects any specific request to any specific claim element. Instead of the clear explanation the Court ordered, Plaintiff blames Ford in purely conclusory terms for his inability "to prove some of the core elements" of his claims. (ECF No. 45, PageID.651.)

The real obstacle, however, isn't Ford's discovery responses and objections—it's Plaintiff's own deposition testimony, which undermines multiple elements of each claim:

1. **Retaliation Claim**: Plaintiff testified his internal ethics complaint to Ford's HR—the basis of his retaliation claim—had nothing to do with disability discrimination. (ECF No. 48-3, PageID.1102-1107.) He also admits filing this complaint only after learning his termination was imminent. (*Id.* at PageID.931-932, 940, 948.)

2. **Disability Harassment Claim**: Plaintiff identified only four interactions arguably related to an alleged disability: (1) Kloman assigned him Ford's standard communication training courses (a request that predated any knowledge of a possible disability), (2) Plaintiff himself disclosed he was "on the spectrum" during his end-of-year negative performance review, (3) Kloman offered to help him request accommodations through the interactive process—an offer Plaintiff rejected, and (4) Kloman mentioned once that he himself had IBS. (ECF No. 48-3, PageID.1025-1027.) Plaintiff, moreover, admits his alleged impairment does not substantially limit any major life activities. (*Id.* at PageID.1030, 1034, 1045-1046.)

3. **IIED Claim**: Plaintiff's claim is based entirely on routine workplace matters—disagreements about assigned work versus his preferred projects, heavy workload, disputes about performance metrics, and what he characterizes as Ford's "bureaucratic" processes that every employee navigates. (*Id.* at PageID.974-984.)

4. **FLSA Claim**: Plaintiff admitted he met all requirements of the Computer Professional exemption requirements. (ECF No. 48-2. at PageID.852-858.)

5. **Vicarious Liability**: Not an actionable claim on its own.

Based on this testimony, Plaintiff's claims will not survive summary judgment. No amount of discovery changes that reality. Still, Plaintiff demands 22 categories of documents hoping to bridge the gaps his own testimony exposed. Discovery cannot fix what Plaintiff himself conceded.

## B. Ford's responses and objections to Plaintiff's discovery requests.

Plaintiff served his Requests for Production on July 14, 2025. Almost all of Plaintiff's 29 requests were terribly overbroad, and several are genuinely difficult to

decipher. (See Plaintiff's Requests that are contained within Defendant Ford Motor Company's Objections and Responses to Plaintiff's Requests for Documents, Exhibit 1.) They sought:

- Every communication from any Ford "stakeholder" that happened to "referenc[e]" Plaintiff without limitation (Request #9)

- Comprehensive cybersecurity system logs spanning years (Requests #4, 11, 14, 24)

- All chat logs, emails, and instant messages from multiple platforms from anyone at Ford that mentioned Plaintiff without limitation (Requests #5)

- Every single email to and from Plaintiff's work email address (Request #6)

- All data and documents from Plaintiff's work laptop (Request #13)

- Records of all deleted or destroyed data, assuming spoliation without factual basis (Request #27)

- Work Plaintiff allegedly performed but "never logged, credited, or compensated"—without defining what this means (Request #18)

- Several categories of Ford's confidential and proprietary technical documentation (Requests #2, 7, 16, 24)

On August 5, 2025, Ford timely produced 789 pages of documents to Plaintiff, including:

- All of Plaintiff's personnel records (job application, offer letter, hire documents, performance check-ins) (produced as control-labeled documents FORD-Kamal-00001-00037)

- All relevant email communications between Plaintiff and his supervisor Ryan Kloman (FORD-Kamal-00038-00081, 00158-00206)

- All email communications from Kloman about Plaintiff (FORD-Kamal-00207-00384)

5

- All of Plaintiff's performance reviews and one-on-one meeting minutes (FORD-Kamal-00032-00057, 00158-00206)

- Plaintiff's complaint to HR and all HR communications about his complaint (FORD-Kamal-00082-00085, 00149-00157, 00385-00424)

- Communications about Ford's invitation for Plaintiff to request disability accommodations (FORD-Kamal-000068-000077)

- All of Plaintiff's pay stubs and W-2s (FORD-Kamal-00425-00477)

- All of Kloman's calendar invites and group calendar invites to Plaintiff and his responses (FORD-Kamal-00478-00789)

After this initial document production, Ford served written objections and responses on October 6, 2025. (Ex. 1.) The parties then engaged in numerous "meet and confer" discussions. During these discussions, Ford repeatedly explained how Plaintiff's requests were improper and overbroad. Rather than serve narrowed requests, Plaintiff demanded carte blanche access to Ford's systems—insisting he needed to inspect Ford's databases, technical repositories, and system logs himself to identify what he wanted. Alternatively, Plaintiff demanded that Ford bring a technical expert to the "meet and confers" to help him identify what documents to request. Following each "meet and confer," Ford nevertheless produced several categories of additional documents:

- December 3, 2025: information about Plaintiff's alleged intellectual property from when he was a contractor during the time that pre-dated his employment and the claims at issue in this lawsuit (FORD-Kamal-00790 through 00805, 01044-01082)

- December 17, 2025: numerous cybersecurity logs, including Rally Dev records (used for employees to record their work) and Git Hub logs (showing changes to Ford's cybersecurity code) (FORD-Kamal-00806 through 00889)

- December 19, 2025: Emails from co-workers about Plaintiff's performance and performance tracking spreadsheets and data from Archer Support Tickets (tracking employee tasks) (FORD-Kamal-01083 through 01102)

To date, Ford has produced over 1,100 pages of documents to Plaintiff.[1]

On January 7, 2026, Plaintiff filed his motion to compel. His deposition took place the next day, on January 8, 2026. At that deposition, Plaintiff admitted he never reviewed any of Ford's productions:

Q.   You've reviewed the documents we've produced in this case, right?

A.   No.

*     *     *

Q.   …So are you—is it your testimony today that documents we produced, the majority of which were back in August, we produced 800 documents to you back in August, is it your testimony today you have not reviewed those?

A.   I reviewed some of those, not all of those. There was not enough time to review that many documents between then and now. (ECF No. 48-3, PageID.1037-1038.)

Plaintiff thus moved to compel production without first checking what Ford already produced. His failure to review Ford's productions is evident throughout his motion—he seeks at least nine categories of documents Ford already gave him and 13 others that are extraordinarily overbroad and irrelevant to his employment claims.

---

[1] Ford will not burden the court by filling these documents, but it has referenced the specific control numbers.

Making matters worse, Plaintiff's motion is so poorly organized that Ford has struggled to determine exactly what Plaintiff believes he's entitled to receive. He jumps haphazardly between different document categories without explaining what he's asking for. He conflates multiple requests into single arguments. He asks for documents he never requested at all, expanding his discovery demands in his motion rather than through properly served requests. He cites request numbers in passing without developing any argument for why Ford's objections lack merit or why the documents are necessary to prove specific claim elements. Ford does its best below to respond to what Plaintiff appears to be demanding.

## Legal Standard

The scope of discovery available to parties in a civil action is "within the sound discretion of the trial court." *Pittman v. Experian Info. Sol, Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (internal quote and citation omitted). As a general matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The proportionality analysis requires the Court to consider six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

## Argument

## I.     Plaintiff's motion violates the Local Rules and the Court's directive.

Plaintiff's motion fails on two independent threshold grounds:

*First*, he didn't attach his discovery requests. Local Rule 37.2 requires discovery motions to include "a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion." E.D. Mich. LR 37.2. Plaintiff's 22-page brief includes neither. This alone warrants denial of his motion.

*Second*, he ignored the Court's express guidance. At the January 6, 2026 status conference, the Court advised Plaintiff to explain in his motion how each of the requests he sought to compel would actually prove discriminatory harassment or retaliation. Plaintiff's motion doesn't do this. Nowhere does he connect specific documents to specific claim elements. Instead, he makes vague assertions that Ford is withholding "critical evidence" and that he cannot "prove some of the core elements" of his claims without more documents. (ECF No. 45, PageID.651.) That's not what the Court asked for.

The 2015 amendments to Rule 26(b)(1) require discovery to be "proportional to the needs of the case," considering "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Critical to Plaintiff's motion and the Court's directive to Plaintiff, the 2015 Advisory Committee Notes state: "A party claiming that a request

is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." *EEOC v. Aspire Regional Partners, Inc.*, 2025 WL 1291454, at *2 (S.D. Ohio May 5, 2025) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee note to 2015 amendment.)

Plaintiff hasn't explained anything. He doesn't identify which elements of his five claims each document category would prove. He doesn't explain how Rally Dev technical records establish disability harassment, how cybersecurity vulnerability reports prove ADA retaliation, how data pipeline logs demonstrate intentional infliction of emotional distress, or how system access logs show FLSA violations. And all of these types or records are massive.

Ford has done its best to figure out what Plaintiff wants and respond accordingly. But his motion never clearly explains what he needs or why he needs it. Plaintiff bears the burden on this motion. He hasn't carried it and his motion should be denied.

## II. Plaintiff's discovery requests fail Rule 26's proportionality requirement because his claims fail for elementary reasons that no discovery can cure.

Proportionality means asking whether the requested discovery would actually change the outcome of the case. Courts routinely deny motions to compel based on mere speculation that something helpful might turn up. *See Tolliver v. Federal Rep. of Nigeria*, 265 F. Supp. 2d 873, 880 (W.D. Mich. 2003) ("[t]he mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions").

Plaintiff demands Ford produce overbroad requests seeking loads of technical documentation, proprietary systems data, and confidential business information. But his own deposition testimony proves his claims fail for multiple reasons, including very basic, elementary, dispositive facts he admitted himself. When discussing the complaint that Plaintiff alleges he was retaliated against for making to HR, he disclaimed engaging in ADA-protected activity. (ECF No. 48-3, PageID.1102-1107.) His disability harassment claim fails because Plaintiff testified he was not disabled within the meaning of the ADA and he does not connect any alleged harassment to an alleged disability. (*Id.* at PageID.1030, 1034, 1045-1046.) His IIED claim is based on nothing more than routine workplace disputes. (*Id.* at PageID.974-984.) And he conceded every element of the Computer Professional exemption. (ECF No. 48-2 at PageID.852-858.)

Plaintiff's claims stand ripe for dismissal under Rule 56(a). If that motion were already filed, Plaintiff could not salvage his claims and buy more time under Rule 56(d), because he cannot identify any discovery that would cure what his own testimony gave away. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (although Rule 56(d) allows courts to defer ruling on summary judgment to permit discovery, this exception requires Plaintiff to "specif[y] reasons" justifying the delay "by affirmatively demonstrating … how postponement … will enable him … to rebut [defendant's] showing of the absence of a genuine issue of fact."). When claims fail for reasons unrelated to the requested discovery, the burden of producing thousands of pages (or here potentially tens of thousands) far outweighs any benefit. *Healthcare & Merial Ltd.*

*Flea Control Prod. Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014) (courts need not grant discovery on facts that "would be irrelevant to the underlying issue to be decided"). The same principle should apply here where discovery is over and Plaintiff has admitted away the elements of his legal claims.

The massive burden Plaintiff seeks to impose on Ford is grossly disproportionate to the nonexistent benefit the discovery would provide in resolving claims that fail for reasons having nothing to do with Ford's technical systems. The Court should deny Plaintiff's motion in its entirety.

III.  **Plaintiff seeks nine categories of documents Ford already produced but failed to review before filing his motion.**

Plaintiff moves to compel production of documents Ford already provided months ago. During his January 8, 2026 deposition—taken the day after he filed this motion—Plaintiff admitted he never reviewed the 1,100+ pages Ford produced dating back to August 2025. (ECF No. 48-3, PageID.1037-1038.) This failure to review Ford's productions before moving to compel wastes judicial resources. The following eight categories demonstrate that Plaintiff seeks documents he already possesses:

1.  **RFP 1 - Personnel Records** (Plaintiff's Motion ¶¶ 34, 51, 88). Ford already produced these records at FORD-Kamal-00001-00057, 00158-00206 including Plaintiff's complete personnel file, all performance reviews, one-on-one meeting minutes, and employment documentation. (Ex. 1, Response to Request No. 1.) Plaintiff claims these records are incomplete and withholding "broader records that would show

how the company's policies were applied to other employees." (¶ 88.) But Plaintiff did not request records related to other employees and attempting to do so now through a discovery motion is improper.

2.      **RFP 2 - Rally Dev Contributions** (Plaintiff's Motion ¶¶ 33-35, 51, 73, 85). Ford already produced Rally Dev records at FORD-Kamal-00806-00837, showing system contributions and technical records. (Ex. 1, Response to Request No. 2.)

3.      **RFP 3 - Complaint and Investigation Materials** (Plaintiff's Motion ¶¶ 39, 53). Ford already produced the complete HR complaint at FORD-Kamal-00082-00085 and all related HR communications at FORD-Kamal-00149-00157. (Ex. 1, Response to Request No. 3.) Plaintiff's assertion that these records fail to show how HR investigated his complaint (*see, e.g.,* ¶ 54) is misleading—Plaintiff testified that he withdrew his complaint and asked HR not to investigate. (ECF No. 48-3, PageID.1109-1110, 1131.)

4.      **RFP 4 - Archer System Logs** (Plaintiff's Motion ¶ 55). Ford already produced not only Plaintiff Archer Support Ticket completions, but the same comparative data for everyone on his team from 2023-2024. (*See*, FORD-Kamal-01084-01099.) (Ex. 1, Response to Request No. 4.) The documents show that Plaintiff worked on the least number of support tickets among anyone that reported to Kloman.

5.      **RFP 9 - Kloman Communications** (Plaintiff's Motion ¶¶ 40, 53, 74). Ford searched Kloman's emails and calendar for Plaintiff's email address and name during the dates of his employment and produced all relevant, responsive documents

(*see,* FORD-Kamal-00038-0008, 00158-00384, 01083). (Ex. 1, Response to Request No. 9.) This constitutes every email between Kloman and Plaintiff, and every email Kloman sent about Plaintiff to others including other managers.

6.    **RFP 10 - HR Records** (Plaintiff' Motion ¶ 53). Plaintiff seeks investigation materials claiming they will establish "fabrication of misconduct" and "suppression of whistleblower activity." Ford already produced all HR and People Matters communications at FORD-Kamal-00385-00424 and FORD-Kamal-00069-00077. (Ex. 1, Response to Request No. 10.) These documents include every communication with HR representatives Amanda Brooker, Meghan Marshall, and DeAnne Griffore regarding Plaintiff's employment, complaints, and termination.

7.    **RFP 19 - Payroll Records** (Plaintiff's Motion ¶ 37). Plaintiff seeks payroll and wage records for "FLSA claims and damages calculations." Ford already produced all pay stubs and W-2s at FORD-Kamal-00425-00477. (Ex. 1, Response to Request No. 19.)

8.    **RFP 21 - Health-Related Communications** (Plaintiff's Motion ¶¶ 40, 75). Plaintiff's Request No. 21 seeks emails and chats in which Kloman referenced Plaintiff's health. Ford produced the emails Kloman sent initiating the accommodation process (FORD-Kamal-00060-00077) and an email where Kloman wished Plaintiff well (FORD-Kamal-00547). (Ex. 1, Response to Request No. 21.) This constitutes Ford's complete response—there are no other documents responsive to this request. Moreover,

14

Plaintiff himself testified he is not aware of anyone at Ford saying anything derogatory about his health or alleged impairments. (ECF No. 48-3, PageID.1064-1066.)

9.    **RFP 28 – Intellectual Property Docs** (Plaintiff's Motion ¶¶ 35, 51). Plaintiff's intellectual property is not relevant to his claims—all IP work occurred before his employment and without Kloman's knowledge. Nonetheless, Ford already produced documents related to patents for work that Plaintiff did prior to his employment as documents FORD-Kamal-01044-01082. (Ex. 1, Response to Request No. 28.)

Plaintiff already has these documents. He should have reviewed Ford's productions before filing his motion. The Court should deny the motion as to these eight categories and require Plaintiff to actually examine what Ford gave him before demanding more.

## IV.    **Plaintiff's 13 remaining requests are overbroad and seek irrelevant information that is not proportional to the needs of the case.**

The requests Plaintiff seeks to compel reveal a clear pattern: sweeping demands for Ford's confidential business information, proprietary technical systems, and cybersecurity infrastructure—none of which connects to his employment claims. Plaintiff essentially seeks to recreate his systems access as though he remained a Ford employee, demanding unfettered access to every digital footprint he left during his tenure. He wants to rummage through chat logs, email archives, workstation data, technical platforms, and security systems—touching everything he encountered during

his employment regardless of whether any of it relates to his well-documented performance deficiencies. Each demand exceeds permissible discovery bounds:

1. **RFP 4 - Chronicle Logs** (Plaintiff's Motion ¶ 55). Plaintiff demands comprehensive logs from Ford's Chronicle platform—a cloud-native cybersecurity system built on Google's infrastructure that ingests, stores, and analyzes massive volumes of security data to detect cyber threats in real time. These logs encompass authentication records, endpoint data, network traffic, cloud infrastructure activity, application logs, email security records, and data loss prevention alerts. Plaintiff offers no justification for this sweeping request beyond conclusory assertions that these logs will reveal "pretext, spoliation, and true motives." How will they do that? Balanced against Plaintiff's testimony that he engaged in no ADA-protected activity eliminates any legitimate need to explore pretext or motive. His unsupported spoliation accusations lack any factual foundation. Plaintiff has failed to carry his burden demonstrating relevance or proportionality. The Court should deny this fishing expedition into Ford's core security infrastructure.

2. **RFP 5 - Webex/Teams Chat Logs** (Plaintiff's Motion ¶¶ 43, 55). Plaintiff demands massive amounts of everyday communications in the form of all chat logs from Webex and Teams platforms, claiming they constitute the "modern equivalent of hallway conversations" likely containing "candid remarks demonstrating hostile work environment or retaliatory animus." His own testimony demolishes this theory: he admitted no one made derogatory comments about him during his

employment and he knows of nothing in these chat logs that would support his claims. (ECF No. 48-3, PageID.1064-1066.) This textbook fishing expedition wastes judicial resources and imposes disproportionate burdens on Ford. The Court should reject it.

3.   **RFP 6 - All Emails** (Plaintiff's Motion ¶ 55). Plaintiff demands every email to and from his work account, offering only the vague assertion that they're needed "to prove discrimination, pretext, and spoliation." This conclusory justification fails to meet Plaintiff's burden. The request is wildly overbroad, grossly disproportionate to any legitimate case needs, and constitutes precisely the type of unfocused data dump discovery rules prohibit. The Court should deny it.

4.   **RFP 7 - CDCTools Wiki History Logs** (Plaintiff's Motion ¶¶ 33-35, 51, 85). Plaintiff demands all CDCTools Wiki contributions and undefined "history logs" to "trace implementation of his ideas" and prove he was an innovator. This request fails on multiple grounds. First, Plaintiff disclaimed any protected activity during his deposition, eliminating pretext as an issue and negating his ability to establish a prima facie retaliation case. Second, even assuming Plaintiff could dispute his poor performance, these documents remain irrelevant and overbroad because they fall far outside his well-documented performance failures. The request doesn't attempt to show Ford's assessment was pretextual—it challenges Ford's business judgment about what constitutes valuable contributions. Federal courts do not second-guess such business decisions. *Smith v. Leggett Wire Co.,* 220 F.3d 752, 763 (6th Cir. 2000)(As we have oft times repeated, "it is inappropriate for the judiciary to substitute its judgment for that

of management.") Third, allowing this request would force Ford to produce vast quantities of technical documentation to facilitate Plaintiff's attempt to rewrite his performance history. The Court should deny this meritless demand.

5. **RFP 8 - OS Behaviors Policies**. Plaintiff demands all policies and documents related to Ford's Operating System (OS) Behaviors and performance evaluation framework. Although the basic framework for performance reviews and assessment was produced, he pursues more documents because he believes all businesses should be prohibited from assessing employee behaviors or evaluating performance using subjective standards. Somehow, he contends that rating employees on their behavior could constitute disability harassment. (ECF No. 48-3, PageID.1030-1031.) This speculative theory lacks any legal or factual foundation. Performance evaluation policies are standard business practices and have no bearing on Plaintiff's discrimination claims. The request should be denied.

6. **RFP 11 - Cybersecurity Vulnerability Reports** (Plaintiff's Motion ¶¶ 42-43, 53, 75). Plaintiff demands all communications containing cybersecurity vulnerability reports to demonstrate "protected whistleblowing activity." This Court already dismissed Plaintiff's Whistleblower Protection Act claim for failure to state a claim. (ECF No. 20.) The request seeks information for a non-existent claim and should be denied.

7. **RFP 13 - All Workstation Data and Access Logs** (Plaintiff's Motion ¶¶ 44, 51). Plaintiff demands carte blanche access to his entire workstation as it existed

during his employment. He claims this will prove his performance and could reveal "data was intentionally destroyed (spoliation)" demonstrating "consciousness of guilt." (¶ 44.) This demand rests on baseless spoliation accusations unsupported by any evidence. Ford preserved a forensic image of Plaintiff's workstation, yet he has failed to articulate any legitimate need for unfettered access to all data and work product from his employment. The request is facially overbroad, seeks to transform discovery into an unguided expedition, and should be denied.

8.     **RFP 14 - Forensic System Logs related to his Workstation** (Plaintiff's Motion ¶¶ 44, 55). Plaintiff demands these "logs" to "determine whether crucial data was destroyed." This request perpetuates the same unfounded spoliation accusations that permeate his motion. Without any factual predicate suggesting data destruction occurred, this demand amounts to a speculative hunt for evidence that doesn't exist. The request lacks merit and should be denied.

9.     **RFP 16 – Plaintiff's IP Communications** (Plaintiff's Motion ¶¶ 33-35, 51). Plaintiff demands all communications across Ford's entire company concerning his "technical contributions and work product" related to his alleged intellectual property. This appears designed to manufacture a good performance narrative based on contributions he made before his employment. The inventions Plaintiff helped develop predated his hire, occurred before he reported to Kloman, and bear no connection to his performance as a cybersecurity analyst. (ECF No. 48-2, PageID.802-805.)  The request is irrelevant and should be denied.

19

10.    **RFP 17 - Internal Job Applications** (Plaintiff's Motion ¶ 34). Plaintiff demands all his internal job applications. According to Plaintiff, he began applying internally—unbeknownst to Kloman—approximately two-to-three months before his termination because he no longer wanted to work in cybersecurity. This case includes no failure-to-hire claim, rendering Plaintiff's internal applications to unidentified positions somewhere within Ford irrelevant to his claims. The request should be denied.

11.    **RFP 24 - Data Pipeline Logs** (Plaintiff's Motion ¶¶ 35, 42, 55, 85). Plaintiff demands comprehensive Jenkins pipeline logs, Terraform history, and Tekton pipeline logs for his entire team. These technical logs track changes and activities in automated software builds and infrastructure deployments—essentially transcripts showing each executed step in automated processes. Plaintiff insists he needs these logs to confirm his reports of security corner-cutting and substantiate his "whistleblowing activity." (ECF No. 45, PageID.659.) This Court dismissed Plaintiff's Whistleblower Protection Act claim, eliminating any arguable relevance for these technical records. (ECF No. 20.) Moreover, Plaintiff has identified no specific information these logs would contain or how they connect to his remaining claims. The request constitutes an unfocused demand for technical data in search of a claim and should be denied.

12.    **RFP 26 - Vendor Communications** (Plaintiff's Motion ¶¶ 40, 53). Plaintiff demands all communications about him with third-party vendors concerning his performance, specifically referencing suspected "fabricated negative comments from Google." The request identifies no custodians, no search terms, and imposes no

limitations whatsoever. Kloman does not believe he discussed Plaintiff's performance with third-party vendors, and searches of his emails produced no responsive documents. Plaintiff has failed to connect this request to any surviving claim or provide any foundation suggesting such communications exist. The request is overbroad, irrelevant, and should be denied.

13.    **RFP 27 - Deleted Data Records** (Plaintiff's Motion ¶ 44). Plaintiff demands records of all deleted data, asserting Ford "intentionally destroyed" evidence proving "consciousness of guilt." This serious accusation rests on zero evidentiary foundation. Plaintiff simply assumes wrongdoing and demands Ford prove a negative. Discovery rules do not permit such speculative accusations to justify sweeping demands. The request should be denied.

The above demands for categories of documents share common fatal flaws: they lack relevance to his claims, impose grossly disproportionate burdens on Ford, and seek to transform discovery into an unguided expedition through Ford's massive proprietary technical systems and confidential business information. Many requests pursue evidence for the dismissed whistleblower claim. Others rest on unfounded spoliation accusations. Still others amount to fishing expeditions contradicted by Plaintiff's own testimony. Discovery is not a license to conduct a forensic audit of an employer's entire IT infrastructure in hopes of stumbling upon something useful. The Court should deny Plaintiff's motion to compel in its entirety.

**Conclusion**

Plaintiff does not need more documents. He needs to review the documents he already has and do the work required to prove his case or voluntarily dismiss claims he knows or should know lack merit. The Court should deny Plaintiff's motion.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: _/s/ Ryan D. Bohannon_
    Eric J. Pelton (P40635)
    Ryan D. Bohannon (P73394)
*Attorneys for Defendant*
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
Dated: January 21, 2026       rbohannon@khvpf.com
597904

22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW MAGDY KAMAL,

     Plaintiff,                Case No. 24-cv-12073

v.                        Hon. Laurie J. Michelson

FORD MOTOR COMPANY,    Magistrate Judge Curtis Ivy, Jr.

     Defendant.

---

## BRIEF FORMAT CERTIFICATION FORM

I, Ryan D. Bohannon, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☐ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

                              */s/ Ryan D. Bohannon*

Dated: January 21, 2026        Ryan D. Bohannon (P73394)

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.  I further certify that I have served via email and U.S. Mail the aforementioned document upon the following non-ECF Plaintiff:

> Andrew Magdy Kamal
> 801 W. Big Beaver Rd.
> Suite 300, MB #38
> Troy, MI 48084.
> andrew@starkdrones.org

> /s/ *Ryan D. Bohannon*
> Ryan D. Bohannon (P73394)
> Kienbaum Hardy
> Viviano Pelton & Forrest, P.L.C.
> 280 N. Old Woodward Ave., Ste. 400
> Birmingham, MI  48009
> (248) 645-0000
> rbohannon@khvpf.com

597904